UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 13-cv-22956-RSR

ANDREW MOORE d/b/a
KRYOMAN, an individual,

        Plaintiff,

vs.

KRYOGENIFEX, INC., a Florida corporation;
KRYO ENTERTAINMENT, LLC, a Florida
limited liability company;
ALEJANDRO GONZALEZ, an individual; and
DOES 1-10, unknown persons or entities,

        Defendants.
_____/

## AMENDED COMPLAINT

Plaintiff, ANDREW MOORE d/b/a KRYOMAN ("Mr. Moore"), sues Defendants, KRYOGENIFEX, INC. ("Kryogenifex"); KRYO ENTERTAINMENT, LLC ("Kryo Entertainment"); ALEJANDRO GONZALEZ ("Mr. Gonzalez"); and DOES 1-10 ("Doe Defendants") (collectively, Kryogenifex, Kryo Entertainment, Mr. Gonzalez, and the Doe Defendants shall be referred to herein as the "Defendants"), and alleges as follows:

**NATURE OF THE ACTION, JURISDICTION, AND VENUE**

1. This is a civil action seeking damages and injunctive relief for the following: 1) Defendants' trademark infringement under the Lanham Act, 15 U.S.C. § 1114; 2) Defendants' false designation of origin and unfair competition under the Lanham Act, 15 USC § 1125(a); 3) declaratory relief under 28 U.S.C. §§ 2201 & 2202; and 4) Defendant Kryogenifex's breach of

1

the February 6, 2006 Mutual Nondisclosure Agreement between Mr. Moore and Kryogenifex (the "NDA").

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 28 U.S.C. § 1121 for claims arising under the Lanham Act 15 U.S.C. §1051 *et seq.*, and jurisdiction over the claims for declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.  This Court has jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367 as those claims arise from the same common nucleus of operative fact as the other claims asserted herein.

3. This Court has personal jurisdiction over the Defendants and venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and/or 28 U.S.C. § 1400(a) because: 1) a substantial part of the acts giving rise to this action occurred or originated in this judicial district; 2) pursuant to the NDA, the parties to the NDA agreed to resolve this dispute in this judicial district; and 3) Mr. Moore and the Defendants can be found in this judicial district.

## THE PARTIES TO THIS ACTION

4. Mr. Moore is an individual residing in this judicial district.

5. Kryogenifex is a Florida corporation with a principal place of business in this judicial district.

6. Kryo Entertainment is a Florida limited liability company with a principal place of business in this judicial district.

7. Mr. Gonzalez is an individual residing in this judicial district.

8. The Doe Defendants are individuals and/or entities of unknown identity, form, and residence, which, upon information and belief, are directly or indirectly participating in the events giving rise to this action.  Upon information and belief, the Doe Defendants have been

and are personally participating in or had/have the ability and right to supervise, direct and control the acts complained of herein.  Alternatively, the Doe Defendants have worked and/or are working in combination or conspiracy with Defendants Kryogenifex, Kryo Entertainment, and Mr. Gonzalez in the commission of the acts complained of herein.

9. Mr. Gonzalez is an officer of Kryogenifex and Kryo Entertainment, and Mr. Gonzalez directs, controls, ratifies, participates in, and is a moving force behind the infringing activities of Defendants Kryogenifex and Kryo Entertainment.

## GENERAL ALLEGATIONS

### A. Mr. Moore And The Kryoman® Trademark

10. Mr. Moore is the creator of Kryoman®, a character designed for entertainment services and live performances.

11. The Kryoman® character generally appears as an approximately 9 (nine)-foot tall robot covered in color-changing LED lights and wielding a wide-variety of hand-held pyrotechnical equipment, including without limitation lasers, light displays and pressurized liquid carbon dioxide ($CO_2$) dispensers.

12. Mr. Moore is also the original Kryoman® performer, and his Kryoman® performances have been featured both domestically and internationally.

13. An illustration of Mr. Moore's copyrighted Kryoman® character/persona is shown at Figure 1 below:



**Figure 1 – Mr. Moore as Kryoman®**

14. Mr. Moore began performing under the Kryoman® mark in European venues starting in 2005.

15. Having gained considerable fame as an original, one-of-a-kind act, Mr. Moore expanded the Kryoman® tour with domestic and international performances, and is presently performing across the United States, Europe, Asia, South America, and Africa under the Kryoman® trademark.

16. The Kryoman® performances have also appeared in world-renowned electronic music venues including, but not limited to, Space Ibiza (Carl Cox & Friends), Amnesia (Cocoon) Ibiza, Aria Casino and Resort in Las Vegas with the Light Group (Haze), and Pacha (FMIF) Ibiza.

17. The Kryoman® brand has now expanded to include multiple Kryoman® personas and a team of Kryoman® performers, and the resulting increased bookings for Kryoman® performances has increased the public's recognition and awareness of the Kryoman® trademark.

18. Many world-renowned electronic music artists have utilized and incorporated Kryoman® performances in the artists' live shows, including but not limited to David Guetta (Billboard Top Artist of the Year 2010, winner of 2 Grammy Awards), Carl Cox (DJ Magazine Top DJ), Armin Van Buuren (3 albums on Billboard 200), AfroJack (2011 Grammy Award winner), and Tiesto (Top 3 ranking in DJ Mag's Top 100 DJ's in the World for 10 years).

19. The Kryoman® brand also has extensive domestic and international recognition in the "mainstream" entertainment industry.

20. In addition to performing with the internationally recognized Black Eyed Peas for Walmart's internet series Soundcheck, Mr. Moore's Kryoman® robot has also appeared in various music videos including but not limited to, David Guetta's "Little Bad Girl" featuring world-renowned hip-hop artists Taio Cruz and Ludacris; and Afrojack's "Good Time" featuring world renown hip-hop artist Lil' Wayne and celebrity personality Paris Hilton.

21. At the 2012 American Music Awards, guests were entertained by a pair of Kryoman® performances during the opening ceremony act together with performers David Guetta and Nicki Minaj.

22. In 2012, a Kryoman® performance appeared on the popular television series, "Dancing with the Stars."

23. In 2013, Mr. Moore expanded performances under the Kryoman® trademark to include DJ performances, and has since used the Kryoman® trademark with DJ performance in many notable venues, including but not limited to the Ultra Music Festival® (Miami & Croatia), the M Club in Honolulu, Hawaii, and Haze in Las Vegas, Nevada.

5

24. Mr. Moore has taken various steps to protect the tremendous investment that he has made in developing the character and Kryoman® brand.

25. Mr. Moore has registered the appearance of the Kryoman® performer with the U.S. Copyright Office, and he is the owner of U.S. Copyright Registration No. VA 1-725-537.

26. On April 30, 2010, Mr. Moore submitted U.S. Trademark Application Serial No. 85027012 ("the '012 application") with the United States Patent and Trademark ("USPTO") for the word mark KRYOMAN in connection with International Class 041 (more specifically, in connection with entertainment services in the nature of live performance).

27. On December 10, 2010, the USPTO granted Mr. Moore's registration for the Kryoman® mark, and issued U.S. Trademark Registration No. 3,893,298 ("the '298 registration").

### B. Defendants Kryogenifex And Mr. Gonzalez, And The NDA

28. Mr. Moore's relationship with Kryogenifex and Mr. Gonzalez began in or about 2005.

29. At the time, Kryogenifex and Mr. Gonzalez held themselves out as being knowledgeable regarding cryogenic special effects equipment. On the company's website, www.kryogenifex.com, Kryogenifex described itself as "a full-service cryogenic special effects company providing a variety of services," and further represents that it "design[s] and install[s] extreme cooling and fogging systems for entertainment venues and special events using liquid nitrogen."

30. Defendants Kryogenifex and Mr. Gonzalez assisted Mr. Moore in developing a crude and very basic carbon dioxide ($CO^2$) dispensing systems which Mr. Moore initially

6

incorporated in his live acts and performances under the Kryoman® trademark. Mr. Moore, however, no longer uses or incorporates Defendants' systems in his performances or live acts.

31. On or about February 6, 2006, Mr. Moore and Kryogenifex executed a Mutual Nondisclosure Agreement, *i.e.*, the NDA.

32. The NDA contains a non-competition and non-solicitation provisions which states as follows:

> Non-Competition and Non-Solicitation. The parties agree that during this Agreement and for a period of three (5) [*sic*] years subsequent to any termination of this Agreement, whether voluntary or involuntary, ***the parties will not: (a) interfere with, disrupt, or attempt to disrupt any past, present or prospective relationships, contractual or otherwise, between the other party to this Agreement and any client or supplier of the other party*** or (b) solicit any employee or agent of the other party or the other party's suppliers, as the case may be. The parties agree and acknowledge that a violation of this covenant would cause irreparable injury to the other party and that the remedy of law for any violation or threatened violation thereof would be inadequate and that the aggrieved party shall be entitled to temporary and permanent injunctive or other equitable relief without the necessity of proving actual damages.

NDA at ¶ 5 (emphasis added), copy of which is attached hereto as Exhibit "A."

33. To date, none of the parties to the NDA have attempted to terminate the NDA.

### C. Defendants' Infringing And Unfairly Competitive Activities

34. At some point in the last several years, Defendants made a decision to trade off the goodwill associated with the Kryoman® trademark.

35. On March 13, 2013, Defendant Kryo Entertainment filed U.S. Trademark Application Serial No. 85875338 ("the '338 application") for the word mark KRYOBOT in International Class 011 (more specifically, "fog making machines"). The '338 application claims a first use date of September 30, 2010.

36.     However, Defendants revealed their true intentions two days later, on March 15, 2013, when Defendant Kryo Entertainment filed U.S. Trademark Application Serial No. 85877613 ("the '613 application") for the word mark KRYOBOT in International Class 041 (the '613 application describes its services as "entertainment in the nature of live performances by a performer with a fog making machine").  The '613 application was filed as an intent-to-use application, and does not include the date the KRYOBOT mark was allegedly first used in commerce.

37.     To date, Defendant Kryo Entertainment has not filed a Statement of Use as required for the '613 application to mature into a registration.  If and when a registration issues on the '613 application, Mr. Moore intends to seek cancellation of such registration pursuant to 15 U.S.C. § 1119.

38.     Upon information and belief, Defendants have adopted and are using the KRYOBOT mark in a manner which infringes Mr. Moore's Kryoman® trademark by marketing and advertising live entertainment performances under the KRYOBOT mark.  As an officer of Defendants Kryogenifex and Kryo Entertainment, Defendant Mr. Gonzalez actively and knowingly caused this trademark infringement.

39.     The KRYOBOT mark is confusingly similar to the Kryoman® trademark when both are used for entertainment services and live performances.

40.     Upon information and belief, Defendants have recently started advertising live performance and entertainment services under the following logo, featuring the word mark KRYOBOT:

8



**Figure 2 – The Infringing KRYOBOT Trademark**

41. Upon information and belief, Defendants have recently used the KRYOBOT mark in connection with live entertainment services in this judicial district.

### D. The Kryo Marks And The Cancellation Proceeding

42. In addition to adopting and applying for a trademark registration for a confusingly similar trademark that would permit the Defendants to trade off the goodwill associated with the Kryoman® trademark, Defendants also proceeded with efforts to interfere with Mr. Moore's use and enjoyment of his Kryoman® trademark.

43. Kryogenifex is the purported owner of the following trademarks: "Kryo" word mark, Registration No. 2,928,564; "Kryogenifex" word mark, Registration No. 4,189,596; "Kryogenifex" logo, Registration No. 4,231,749; "Kryogun" word mark, Registration No. 4,330,896; and "Kryokitchen" word mark, Registration No. 4,327,255 (collectively, the "Kryo Marks").

9

44. All of the Kryo Marks cover goods in International Class 011, and none of the Kryo Marks cover services, much less entertain services in the same International Class as the Kryoman® trademark.

45. Kryogenifex is, and has been, fully aware of Mr. Moore's Kryoman® mark since 2006, if not earlier.

46. At no time since Mr. Moore's adoption and use of the Kryoman® mark has it caused any confusion with the Kryo Marks.

47. Similarly, prior to November 17, 2012, Defendants did not take the position that the Kryoman® mark was in any way confusingly similar with the Kryo Marks, and if Defendants believed that the mark was confusingly similar with the Kryo Marks, Defendants did not disclose such a belief to the USPTO when it was processing the applications for many of the Kryo Marks in 2012 and 2013.

48. Despite there being no confusion between Mr. Moore's Kryoman® mark and any of the Kryo Marks, as alleged above, Defendants sought to strip Mr. Moore of the rights he enjoys in the Kryoman® trademark.

49. In furtherance of the Defendants' scheme, on November 17, 2012, Kryogenifex initiated Cancellation Proceeding No. 92056463 in the USPTO seeking to cancel Mr. Moore's Kryoman® trademark (the "Cancellation Proceeding") on the purported basis that the Kryo Marks have prior, superior rights to Mr. Moore's Kryoman® trademark, and on the purported basis that the Kryoman® trademark is confusingly similar to the Kryo Marks.

50. Although the Petition filed in the Cancellation Proceeding alleges that Defendant Kryogenifex is the owner of the Kryo Marks, the USPTO records for each of the Kryo Marks

states that the Kryo Marks have either been registered in the name of or assigned to Defendant Kryo Entertainment.

51. On February 20, 2013, Mr. Moore submitted his Answer and Affirmative Defenses to the Petition in the Cancellation Proceeding, and asserted various defenses to the Petition.

52. All conditions precedent to this action have been performed, occurred, or have been waived.

53. Mr. Moore has retained the undersigned law firm to represent him in this action, and has agreed to pay reasonable attorney's fees for its services.

## COUNT I
### Trademark Infringement Under Federal Law 15 U.S.C. § 1114
*(As To All Defendants)*

54. Mr. Moore reavers and realleges paragraphs 1 through 53 in support of this count.

55. Defendants' adoption and use of the mark KRYOBOT, which is substantially similar to Mr. Moore's Kryoman® trademark in appearance, is likely to cause confusion, mistake, or to deceive purchasers and potential purchasers into believing that Defendants' products and services are the same as Mr. Moore's products and services or that Defendants' products and services are in some way affiliated with, sponsored, authorized, approved, sanctioned, or licensed by Mr. Moore.

56. Defendants' actions constitute an infringement of Mr. Moore's Kryoman® trademark in violation of 15 U.S.C. § 1114.

57. Upon information and belief, Defendants have engaged in this activity knowingly, willfully, with actual malice, and in bad faith.

11

58. Defendants' infringing conduct has caused Mr. Moore to sustain monetary damage, loss, and injury, in an amount to be determined at the time of trial.

59. In accordance with 15 U.S.C. § 1117(a), Mr. Moore is entitled to recover an award of its actual damages, costs and attorney's fees, and Defendants' profits derived from their infringing activities.

60. If this Court determines that Defendants have engaged in these infringing activities knowingly and willfully, then Mr. Moore should be awarded three times Defendants' profits from its infringing activities.

61. Defendants' actions have also caused, and unless enjoined by this Court will continue to cause, irreparable damage, loss, and injury to Mr. Moore for which it has no adequate remedy at law.

## COUNT II
### False Designation of Origin and Unfair Competition
*(As To All Defendants)*

62. Mr. Moore reavers and realleges paragraphs 1 through 53 in support of this count.

63. Mr. Moore is the owner of the valid and protectable trademark, Kryoman®.

64. Mr. Moore's use of the Kryoman® trademark has been and continues to be in a way that affects interstate commerce.

65. Mr. Moore's use of the Kryoman® trademark was prior to Defendants' unauthorized use of the mark, KRYOBOT.

66. There is a likelihood of consumer confusion caused by Defendants' unauthorized use of the mark, KRYOBOT.

67. Defendants' unauthorized use of the mark, KRYOBOT, was done knowingly, willfully, intentionally, in bad faith, and constitutes a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

68. Defendants' acts are greatly and irreparably damaging to Mr. Moore and will continue to be greatly and irreparably damaging to Mr. Moore unless enjoined by this Court, as a result of which, Mr. Moore is without an adequate remedy at law.

## COUNT III
### Declaratory Relief Pursuant to 28 U.S.C. §§ 2201 & 2202
*(As To Defendants Kryogenifex And Kryo Entertainment)*

69. Mr. Moore reavers and realleges paragraphs 1 through 53 in support of this count.

70. As a result of Defendants Kryogenifex's and Kryo Entertainment's Cancellation Proceeding, an actual case or controversy exists between the parties. Indeed, despite Defendants' long-standing knowledge of Mr. Moore's use of the Kryoman® trademark, Defendants allege that the Kryoman® trademark is confusingly similar to one or more of the Kryo Marks.

71. The controversy is of sufficient immediacy and reality to warrant declaratory relief under 28 U.S.C. § 2201.

72. The nature and extent of the adverse legal interests between the parties are apparent, and the controversy is definite and concrete.

73. Since there is no likelihood of confusion between the Kryoman® trademark and any of the Kryo Marks, Mr. Moore is entitled to a declaration that there is no likelihood of confusion between the parties' marks.

## COUNT IV
### Breach of Contract and Specific Performance
*(As To Defendant Kryogenifex)*

74. Mr. Moore reavers and realleges paragraphs 1 through 53 in support of this count.

75. Mr. Moore and Kryogenifex entered into a valid and enforceable contract, *i.e.*, the NDA.

76. Paragraph five (5) of the NDA restricts the parties to the NDA from interfering with, disrupting, or attempting to disrupt any past, present or prospective relationships, contractual or otherwise, between either party to the NDA and any client or supplier of that party.

77. Defendant Kryogenifex breached the terms of the NDA by seeking to cancel Mr. Moore's Kryoman® trademark, and ultimately, to preclude Mr. Moore from using the key trademark associated with Mr. Moore's business.

78. By seeking to cancel Mr. Moore's Kryoman® trademark, Kryogenifex has interfered with and attempted to disrupt Mr. Moore's relationships and prospective relationships with his present and future clients and suppliers.

79. Kryogenifex's material breach of the terms of the NDA has caused Mr. Moore to suffer injuries for which there is no adequate remedy at law.

80. Kryogenifex's failure to comply with the terms of the NDA entitle Mr. Moore to an equitable remedy requiring Kryogenifex to specifically perform in compliance with the terms of the NDA.

81. Justice requires that Kryogenifex specifically perform its obligations under the terms of the NDA.

82. As a direct result of Kryogenifex's material breach of the NDA, Mr. Moore has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Moore prays for Permanent Injunctive relief, a Judgment for Damages, and Declaration as follows:

A. Permanent Injunctive relief ordering that Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, who receive actual notice of the Order by personal service or otherwise, be permanently enjoined and restrained from:

1. Using the mark KRYOBOT or any confusingly similar variation of the Kryoman® trademark; and

2. Imprinting, producing, marketing, advertising, selling, transporting, distributing, moving and/or otherwise circulating any and all services or products, including, but not limited to entertainment services in the nature of live performances, which bear the mark KRYOBOT or any confusingly similar variation of the Kryoman® trademark, including any phonetic equivalent or variation thereof.

B. Ordering that, in accordance with 15 U.S.C. § 1117, Defendants be required to:

1. Account for and pay over to Mr. Moore an amount equal to Mr. Moore's actual damages, and all of the gains, profits, savings, and advantages realized by Defendants as a result of Defendants' actions, and if Defendants' actions are deemed willful and intentional, then such amount should be increased to an amount not exceeding three times of such amount;

  2. Reimburse Mr. Moore for the costs of this action; and

  3. Reimburse Mr. Moore for any and all reasonable attorney's fees incurred as a result of Defendants' actions.

 C. Declaring that Mr. Moore's use of the Kryoman® trademark does not infringe on any rights of the Defendants.

 D. Ordering Kryogenifex, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with Kryogenifex, to specifically perform its obligations under the NDA by instructing Kryogenifex to cease interfering, disrupting, or attempting to disrupt Mr. Moore's present and prospective client and supplier relationships, including but not limited to instructing Kryogenifex to cease any attempts to cancel, interfere with, or otherwise deprive Mr. Moore of his continued use of the Kryoman® trademark.

 E. Damages in an amount to be determined at trial, plus attorneys' fees, costs, interest and all other remedies that justice requires or the Court otherwise deems appropriate.

Dated: December 16, 2013

Respectfully submitted,
FELDMAN GALE, P.A.
*Counsel for Plaintiff*
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, FL 33131
Telephone No. (305) 358-5001
Telefacsimile No. (305) 358-3309

By: *s/ Richard Guerra*
 Samuel A. Lewis
 Florida Bar No. 55360
 E-Mail: slewis@feldmangale.com
 Richard Guerra
 Florida Bar No. 689521
 E-Mail: rguerra@feldmangale.com

**CERTIFICATE OF SERVICE**

I HEREBY certify that on December 16, 2013, I filed the foregoing document with the Clerk of the Court.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

> */s/ Richard Guerra*
> Richard Guerra

**SERVICE LIST**
*Andrew Moore v. Kryogenifex, Inc., et al.*
**Case No.: 13-cv-22956-RSR**
**United States District Court, Southern District of Florida**

Nancy J. Flint, Esq.
NANCY J. FLINT, ATTORNEY AT LAW, P.A.
1844 N. Nob Hill Road, #424
Plantation, Florida 33322
Telephone: (954) 812-0660
Facsimile: (866) 517-9150
Email: nancy@flintiplaw.com
Via CM/ECF Notice and Email

*Counsel for Defendants*